# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-1526

AMERICAN INTERNATIONAL SPECIALTY LINES
INSURANCE COMPANY,

*Plaintiff-Appellant*,

v.

ELECTRONIC DATA SYSTEMS CORPORATION
and EDS/SHL CORPORATION,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 2783—**James F. Holderman**, *Judge*.

_____

ARGUED SEPTEMBER 3, 2003—DECIDED OCTOBER 21, 2003

_____

Before POSNER, KANNE, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. This is a procedurally complex case involving the arbitrability of subsidiary coverage in a liability insurance policy. The insurer, AISLIC, issued a claims-made liability policy to MCI "and its subsidiaries," the collectivity being designated on the first page of the policy as the "Named Insured." A provision on "Subsidiary Coverage" extends the protection of the policy to "any past . . . Subsidiary of the Named Insured." The policy insures

against "claims [of liability] that are first made against the Insureds during the Policy Period" arising out of "wrongful acts" committed by the insureds; and "Insureds" are defined redundantly as the Named Insured plus "any subsidiary of the Named Insured, but only with respect to wrongful acts which occur while it is a subsidiary and are otherwise covered by this policy." Disputes under the policy "shall be subject to the alternate dispute resolution process ('ADR') set forth in" the policy, and "the Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause."

A subsidiary of MCI named MCIS did a project for the New York Police Department that gave rise to a claim by the Department against MCIS for damages caused by alleged "wrongful acts" within the meaning of the policy. Between the time the work was done and the claim for damages was made, MCIS was sold to EDS. Because the claim was made while the policy that AISLIC had issued to MCI was in force and arose from acts committed before MCI's sale of the subsidiary, EDS believed that the subsidiary, the former MCIS, retained coverage under the policy. AISLIC conceded as it must that the sale of a subsidiary does not eliminate coverage for wrongful acts committed before the sale, but denied that EDS/SHL (MCIS's new name after the sale) had a valid claim under the policy, because, among other things, it had failed to give AISLIC timely notice of the police department's claim or to obtain AISLIC's consent to EDS/SHL's $20 million settlement with the department.

EDS/SHL invoked the ADR clause of the policy, demanding arbitration (the clause authorizes a choice between arbitration and mediation) of its dispute with AISLIC, which responded by bringing this diversity suit against EDS/SHL to enjoin arbitration and declare that EDS/SHL's

claim has no merit. AISLIC joined EDS as an additional defendant, doubtless to bolster its contention, discussed at the end of this opinion, that EDS/SHL is not a "real" subsidiary but an indistinguishable commingled pile of EDS assets. The defendants moved the district court under section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, for an order directing AISLIC to arbitrate the parties' dispute. The court granted the motion and arbitration was then conducted that resulted in an award to EDS/SHL of some $14 million, which the district court confirmed and which AISLIC, appealing the confirmation under 9 U.S.C. § 16(a)(1)(D), challenges on the sole ground that EDS/SHL had no right to arbitration. That is, AISLIC is not questioning the merits of the arbitration award; in effect it is saying, "the insured is right, but we want another tribunal to say so."

EDS/SHL seeks to block AISLIC at the threshold by arguing that AISLIC willingly participated in the arbitration (even to the extent of arguing nonarbitrability to the arbitrators) and by doing so forfeited any challenge to arbitrability. Now it is true that AISLIC could not be permitted to play heads I win tails you lose, by failing to challenge arbitrability until it had seen whether it had won or lost the arbitration. *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, AFL-CIO*, 760 F.2d 173, 175-76 (7th Cir. 1985); *JCI Communications, Inc. v. International Brotherhood of Electrical Workers, Local 103*, 324 F.3d 42, 49-50 (1st Cir. 2003). But it didn't do that; it challenged arbitrability at the outset and participated in the arbitration only because the district court ordered it to do so. And the order *may* have been unappealable, in which event AISLIC could not have avoided participating in the arbitration by appealing to this court from the order to arbitrate. As a matter of fact, it *tried* to appeal from that

order, and we dismissed the appeal, though, as we shall explain, not because it was unappealable.

The law relating to the appealability of judicial orders to arbitrate is intricate, as this case illustrates. An order directing (as distinct from one denying, 9 U.S.C. § 16(a)(1)(B)) arbitration is nonfinal, and is expressly made nonappealable by 9 U.S.C. § 16(b)(2) unless (with the important qualification discussed next) it is issued in a case brought to obtain that relief and nothing else. 9 U.S.C. § 16(a)(3); *S+L+H S.p.A. v. Miller-St. Nazianz, Inc.*, 988 F.2d 1518, 1522-23 (7th Cir. 1993); *Perera v. Siegel Trading Co.*, 951 F.2d 780, 783, 785 (7th Cir. 1992); *University Life Ins. Co. v. Unimarc Ltd.*, 699 F.2d 846, 848 (7th Cir. 1983); *Stedor Enterprises v. Armtex, Inc.*, 947 F.2d 727, 730-32 (4th Cir. 1991). This suit, in which the order to arbitrate was issued, wasn't filed by the party desiring arbitration, which is EDS/SHL, but by AISLIC, which was seeking an injunction against arbitration. It might seem to follow that the order to arbitrate was merely an interlocutory order in AISLIC's suit. But (and this is the qualification to which we alluded) if the district judge dismissed AISLIC's claim at the same time that it ordered arbitration, there would be nothing left of the case in the district court and so AISLIC could have appealed; an order that terminates proceedings in the district court is final and appealable, whatever it is called. *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000); *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003); *McCaskill v. SCI Management Corp.*, 298 F.3d 677, 678 (7th Cir. 2002); *Amgen, Inc. v. Kidney Center of Delaware County, Ltd.*, 95 F.3d 562, 566-67 (7th Cir. 1996); *In re Chicago, Milwaukee, St. Paul & Pacific R.R.*, 784 F.2d 831, 833 (7th Cir. 1986); *University Life Ins. Co. v. Unimarc Ltd.*, *supra*, 699 F.2d at 848-50. As the Supreme Court put it in *Green Tree*, an order to arbitrate is appealable, even if entered in a case in

which other relief besides the order was sought, if the district court "plainly disposed of the entire case on the merits and left no part of it pending before the court," even though the winner of the arbitration might later seek a judicial order confirming the award. *Green Tree Financial Corp.-Alabama v. Randolph*, *supra*, 531 U.S. at 86-87. Cases which suggest that an order to arbitrate is either never final and appealable, such as *Perera v. Siegel Trading Co., supra*, 951 F.2d at 786, or that it is never final and appealable in a case in which other relief is sought, such as *S+L+H S.p.A. v. Miller-St. Nazianz, Inc., supra*, 988 F.2d at 1522, cannot survive *Green Tree*.

But did the judge in our case dispose of the entire case? His order is ambiguous. On the one hand it says that the "defendant's [*sic*—should be defendants'] motion to compel arbitration and *to dismiss* is granted" (emphasis added), but on the other hand it says that the "action is dismissed pending resolution of the arbitration proceedings as outlined in open court." This suggests—and the suggestion is reinforced both by the court's not entering a judgment consistent with Fed. R. Civ. P. 58 terminating the case and by the court's later action in confirming the arbitration award without requiring EDS/SHL to file a separate lawsuit—that the action was being stayed to await the outcome of the arbitration, at which point further relief might be sought from the court, for example—as happened here—an order to confirm the arbitration. Yet we have suggested, in the *Amgen* and *Unimarc* cases cited earlier, that if *all* the judge is retaining jurisdiction for is to allow the arbitrator's award to be confirmed without need for the filing of a separate lawsuit, the order to arbitrate is final (final enough might be the better way to put it) and therefore immediately appealable. If this is right (it does seem sensible, since whether the winner of the arbitration sues to confirm his

award or moves to confirm it is an unimportant detail, unaffected by *Green Tree*), the district judge's order to arbitrate in this case was appealable.

Nor did we suggest otherwise in dismissing EDS/SHL's appeal. We dismissed it as untimely, adding that since no Rule 58 judgment—that is, a final judgment so denoted on a separate document—had been entered, EDS/SHL could refile its appeal after obtaining such a judgment. The absence of a Rule 58 judgment is evidence that the judge's decision is not a final, appealable order, but it is not conclusive evidence. If there is nothing left in the district court, his decision is final and appealable even if he has failed to enter a Rule 58 judgment. *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978) (per curiam); *TMF Tool Co. v. Muller*, 913 F.2d 1185, 1189 (7th Cir. 1990). Even so, the time within which the appeal must be filed does not begin to run until the judgment is entered. *United States v. Indrelunas*, 411 U.S. 216 (1973) (per curiam); *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987). Wanting to have the issue of arbitrability settled as soon as possible, AISLIC and EDS/SHL jointly moved the district judge to enter a Rule 58 judgment. He did not act on the motion, and so they went to arbitration. His failure to act was further evidence that he considered his order to arbitrate nonfinal, in which event, Rule 58 judgment or no Rule 58 judgment, AISLIC could not have appealed. But for the reasons we have explained, we think his order was appealable.

Unable to appeal the order to arbitrate, AISLIC had no choice but to participate in the arbitration. *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000); *International Ass'n of Machinists & Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc.*, 900 F.2d 1005, 1009-10 (7th Cir. 1990); *Lukens Steel Co. v. United Steelworkers of America (AFL-CIO)*, 989 F.2d 668, 679 n. 11 (3d Cir. 1993). So its participation was not a waiver of

its objections to arbitration. Nor do we think its failure to take a timely appeal from the order to arbitrate should forfeit its right to obtain appellate review of arbitrability, for by seeking the entry of a Rule 58 judgment it made a bona fide effort to obtain appellate review before the matter went to arbitration. Nor, finally, is EDS/SHL correct that by challenging arbitrability before the arbitrators, AISLIC was forfeiting its right to renew the challenge in court. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 946-47 (1995). There is no rule against repeating an argument in different forums.

We come at long last to the merits. The issue is EDS/SHL's right to arbitrate its dispute with AISLIC. As we noted earlier, while AISLIC contests EDS/SHL's claim for insurance proceeds it does not deny that the liability that MCIS incurred to the New York Police Department for acts done before MCIS was sold to EDS, and that became the subject of the Department's claim against the subsidiary after MCIS was sold to EDS but within the policy period, is within the scope of the policy. This is clear from provisions of the policy that we quoted earlier, and it makes commercial sense as well. Since coverage is limited to the acts of a subsidiary before the subsidiary is sold, the sale does not increase the risk to the insurer, while if coverage terminated upon sale the subsidiary would be unable to obtain insurance at a comparable rate for liability incurred before the sale. EDS/SHL would have had to pay a lot to obtain insurance against the police department's claim *after* the acts giving rise to the claim had occurred, and they occurred before EDS bought MCIS.

If, then, EDS/SHL did not cease to be an Insured under the policy by reason of being a former subsidiary of MCI, it seems very odd that it should be unable to invoke a dispute resolution mechanism, namely arbitration, that the policy

authorizes—at the Insured's election—for resolving such disputes. But that is AISLIC's contention, which it bases mainly on the provision of the policy that we quoted earlier that "the Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause." Since in this context "Named Insured" seems to refer to MCI rather than (as on the first page of the policy) to MCI and its subsidiaries (for what would it mean for MCI's subsidiaries or MCI plus its subsidiaries to be acting on behalf of all Insureds, when MCI and the subsidiaries *are* the Insureds?), it might seem to follow that while EDS/SHL is covered, only MCI can invoke arbitration. But having retained no interest in MCIS after selling it to EDS, MCI hadn't the faintest interest in the mode of dispute resolution used to resolve a dispute between EDS/SHL and AISLIC. An interpretation that places the sole power to invoke arbitration in an entity that has no stake in the arbitration makes no commercial sense. And we cannot think why AISLIC would have consented in its insurance contract with MCI to arbitrate only disputes with MCI and MCI's current subsidiaries, and not with MCI's former subsidiaries still covered by the policy. Furthermore, on AISLIC's interpretation the policy makes no provision for a method of dispute resolution if the Named Insured declines to act on behalf of all the Insureds because it has no stake in the dispute or the disputants. Like other contracts, insurance contracts should not be read to produce interpretations that while consistent with the words of the contract make no commercial sense. *Great West Casualty Co. v. Mayorga*, 342 F.3d 816, 818 (7th Cir. 2003).

Even read literally, the policy does not support AISLIC's position. AISLIC points out that the section of the policy that defines "subsidiary" states that a subsidiary of MCI ceases to be such when MCI ceases to own more than 50

percent of the subsidiary's voting stock. But in context it is apparent that this is a definition of a present subsidiary of MCI, not a past subsidiary, since obviously a past subsidiary is not one that MCI controls. Remember, too, that the policy creates alternative forms of ADR. Regarding the choice between them, the policy states that "either the Insurer and [*sic*—obviously 'and' should be 'or'] the Insureds may elect the type of ADR . . . provided, however, that the Insureds shall have the right to reject the Insurer's choice of ADR at any time prior to its commencement, in which case the Insureds' choice of ADR shall control." Had MCI as Named Insured invoked the ADR provision and AISLIC had as Insurer chosen the mediation alternative, EDS/SHL as an Insured could have vetoed it in favor of arbitration. It would be weird if, the Named Insured having no stake and as a result refusing to act, AISLIC, by in effect choosing nothing, could prevent EDS/SHL from exercising its right to determine the choice of the dispute resolution mechanism.

The policy states that in the event that "the Named Insured" is sold, "this policy shall continue in full force and effect as to Wrongful Acts occurring prior to the effective time of the" sale. In context, the reference is to MCI (it is apparent that "Named Insured" is used in different senses in different places in the policy). If MCI is sold, just as if a subsidiary is sold, the risk to the insurer may change and so it does not want to insure against wrongful acts committed by the new ownership. This has nothing to do with the procedural rights of a covered former subsidiary. AISLIC also points to the clause in the policy that forbids assignment of the policy without its consent. An insurer doesn't want its insured to have carte blanche to assign the insurance to another entity which, once again, may impose unforeseen and uncompensated new risks on the insurer. But

past subsidiaries of MCI are not assignees; they are insureds. And, finally, the furthest that the phrase "on behalf of all Insureds" in "the Named Insured shall act on behalf of all Insureds in selection of the ADR in accordance with this clause" will stretch is to cover a situation in which more than one subsidiary (or MCI plus a subsidiary or subsidiaries) has a claim and the insurer wants to have to deal with only one.

Invoking the earlier-cited section 4 of the Federal Arbitration Act, AISLIC asks for an evidentiary hearing to explore further the meaning of "Named Insured" in the arbitration clause and also to determine whether EDS/SHL is so tightly integrated with EDS as not to be a bona fide subsidiary. A trial to determine arbitrability is required, however, only if the issue that an evidentiary hearing would resolve is fairly contestable. See *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir. 1987); *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286-88 (7th Cir. 1980); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 53-54 (3d Cir. 1980). There is insufficient doubt about EDS/SHL's entitlement to arbitration to warrant such an inquiry. AISLIC's arguments about the meaning of the contract make no commercial sense, as we have seen, and its attempt to cast doubt on whether EDS/SHL is a "real" subsidiary fails because the purpose of former-subsidiary coverage is not to freeze the corporate structure of the former subsidiary but to avoid the gap in liability-insurance coverage that we identified earlier—the gap that would result if coverage lapsed after the acts took place that created potential tort liability.

The insurer's arguments gain what little plausibility they have only from the fact that the policy is less than pellu-

cid—but having drafted it, the insurance company is not entitled to benefit from this fact. It is true, as we explained in *Rhone-Poulenc Inc. v. International Ins. Co.*, 71 F.3d 1299, 1305 (7th Cir. 1995), that "ambiguities in insurance contracts are to be resolved against the insurer . . . only after reasonable efforts at interpretation have failed, including the taking of evidence concerning the drafting or negotiation of the contract." See also *Stone Container Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 165 F.3d 1157, 1161 (7th Cir. 1999); *United States v. Insurance Co. of North America*, 131 F.3d 1037, 1042-43 and n. 11 (D.C. Cir. 1997); *12th Street Gym, Inc. v. General Star Indemnity Co.*, 93 F.3d 1158, 1166 (3d Cir. 1996). But the taking of evidence to determine arbitrability is a last resort, as it defeats an essential goal of arbitration, which is the simplification and expedition of dispute resolution. Unless there are *serious* ambiguities, which there are not in this case, a trial should be avoided. EDS/SHL first made its claim against AISLIC for coverage of its liability to the New York Police Department four years ago, and it is time that this dispute was laid to rest.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*