# In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1890

DEAN L. BUNTROCK,

*Plaintiff-Appellant,*

v.

SECURITIES AND EXCHANGE COMMISSION, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 1274—**Wayne R. Andersen**, *Judge.*

ARGUED SEPTEMBER 23, 2003—DECIDED OCTOBER 29, 2003

Before POSNER, MANION, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* In February of 2002, shortly after the Securities and Exchange Commission had authorized its legal staff to sue Dean Buntrock—the controversial former chief executive officer of the controversial Waste Management corporation (see, e.g., Peter Elkind, "Garbage in Garbage Out: Waste Management Used to Be a Wall Street Darling…," *Fortune*, May 25, 1998, p. 130; Peter Carbonara, "The Greening of Waste Management," *American Lawyer*, Dec. 1990, p. 42; Kim Foltz, "Still Down in the Dumps," *Newsweek*, Apr. 16, 1984, p. 70)—charging him with violations of federal securities law, Buntrock filed this suit against the Commission and its members in the

federal district court in Chicago. The suit asks the court to stay the filing of the SEC's suit on the ground that the Commission failed to investigate Buntrock in an impartial manner before deciding to sue him, in violation of the agency's own regulations and (implicitly) of due process of law. Buntrock did not move for a preliminary injunction, and in March the SEC filed its suit against Buntrock in the same court. That case, originally assigned to another judge, was reassigned to Judge Andersen, the judge in Buntrock's suit, on Buntrock's unopposed motion because the two cases are so closely related. N.D. Ill. R. 40.4. Buntrock had already amended his complaint to ask that the SEC's suit be stayed. But he had not indicated what it should be stayed for. At argument, Buntrock's lawyer told us that what his client *really* wants is a dismissal of the SEC's suit without prejudice to its being reinstated if and when the SEC decides to do so after conducting a brand-new investigation of Buntrock, one purged of the taint of partiality that he has alleged.

The SEC moved to dismiss Buntrock's complaint both for lack of federal subject-matter jurisdiction and for failure to state a claim. Judge Andersen granted the motion to dismiss on the first ground, and Buntrock appeals. Discovery has begun in the SEC's suit, and trial is scheduled for the beginning of 2005. Buntrock has not yet moved in that suit to dismiss it on the basis of the alleged taint. He believes with good reason both that Judge Andersen would give such a motion short shrift and that its denial would not be appealable until the final judgment in the case was entered.

Buntrock's attempt to derail the SEC's suit by filing his own suit against the SEC rather than seeking relief in that suit has no basis in law or common sense, and indeed is (if an oxymoron is permissible) seriously frivolous; and a

frivolous suit does not engage the jurisdiction of the district court. *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276-78 (7th Cir. 1988), and cases cited there. Buntrock contends that two senior employees of the SEC—one is the Commission's chief accountant and the other the chief accountant of its enforcement division—had before coming to work for the Commission participated in audits of Waste Management and that they used what they learned in those audits to influence the Commission to sue Buntrock. Even if this is true, and even if the alleged impropriety would be a bar to the Commission's suit, there would be no justification for Buntrock's suing the Commission rather than urging the impropriety as a defense in the SEC's suit. If *A* knows that *B* is about to sue him and thinks that *B*'s suit is barred by the statute of limitations, *A* cannot file suit against *B* asking that *B* be enjoined from bringing his suit on the ground that *A* has a good defense to it. The "reason" that the cases give for this result is that *A* has an adequate remedy at law—to interpose the statute of limitations as a defense in the case brought by *B*—and lack of an adequate remedy at law is a prerequisite to obtaining equitable relief. *Sokolow v. United States*, 169 F.3d 663, 665 (9th Cir. 1999); see also *Georgia v. City of Chattanooga*, 264 U.S. 472, 484 (1924); *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir. 1993). There is a simpler route to this result: defendants must not be allowed to turn every case in which there is a defense into two cases.

But, says Buntrock, his remedy by way of defense in the SEC's suit is inadequate because if Judge Andersen rejected it, as is apparent from his opinion in the present case that he would, the ruling would be interlocutory and so in all likelihood (given the limitations on the appealability of interlocutory orders) Buntrock would have to go through the agonies and expense of a full district court

proceeding before he could challenge the ruling in this court. But that amounts to saying that interlocutory appeals should be available more freely in the federal system than they are, which may be a good argument but is addressed to the wrong body. We cannot expand the appealability of interlocutory orders—and we cannot permit defendants to circumvent the limitations on appealability by recycling defenses as claims so that the rejection of a defense will be a final order in a separate case. *City of Parma v. Levi*, 536 F.2d 133 (6th Cir. 1976). *Anything* Buntrock could achieve in the present suit he could achieve by interposing an identical defense in the SEC's suit—except an immediate appeal from an adverse ruling by the district judge, and the policy against the promiscuous appealability of interlocutory orders must not be thwarted by allowing defendants to recharacterize defenses as claims. If Buntrock's claim of impropriety, made as a defense in the SEC's suit, would have no merit as the basis of an independent suit, it would have no merit as a defense; if it would have merit as the basis of an independent suit, it would be a meritorious defense as well.

The SEC presents an alternative ground for affirmance: that its decision to sue Buntrock is not judicially reviewable because it is not final. An agency's action in issuing a complaint is not a final, appealable order; judicial review must await the agency's decision concluding the proceeding kicked off by the complaint. *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 246 (1980); *R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430 (7th Cir. 1991); *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003). But the SEC in this case did not issue an *administrative* complaint, that is, a complaint that kicks off a proceeding before the agency. It filed a suit in federal court, which it turned over to its lawyers to prosecute. The administrative phase has ended, just as an or-

der to arbitrate made in a suit seeking such an order and nothing more terminates proceedings in the district court and so is treated as the final decision of the court, *American Int'l Specialty Lines Ins. Co. v. Electronic Data Systems Corp.*, No. 03-1526, 2003 WL 22389816, at *2 (7th Cir. Oct. 21, 2003), even though it merely shunts the proceeding to a different forum. The SEC's decision to sue is not properly before us, but not because of lack of finality; rather, because Buntrock has challenged that decision in an improper manner, by suing the SEC.

Since his case was properly dismissed without an adjudication of the merits, Buntrock is free to replead his complaint as a defense to the SEC's suit and to seek an immediate ruling. But we don't want to raise false hopes. If the SEC or its staff violated legal or ethical rules governing its investigations in deciding to bring suit against Buntrock, that may be sanctionable conduct, but it is not, without more, a defense to the SEC's suit. Police who arrest a person in violation of the Fourth Amendment are subject to suit for violating his constitutional rights, and any evidence they obtain as a result of a search incident to the arrest cannot be used against him at his trial. But the violation is not a defense to a prosecution for the crime that he was arrested for. *United States v. Morrison*, 449 U.S. 361, 365-66 (1981); *United States v. Rogers*, 751 F.2d 1074, 1078 (9th Cir. 1985). No more does a lesser irregularity—a conflict of interest of a prosecutor, or of any other plaintiff's lawyer—warrant dismissal even if it results in the institution of a criminal proceeding, see *Havens v. Indiana*, 793 F.2d 143, 144-45 (7th Cir. 1986); *United States v. Terry*, 17 F.3d 575, 579 (2d Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993); *United States v. Lilly*, 983 F.2d 300, 309-10 (1st Cir. 1992); *United States v. Wallach*, 935 F.2d 445, 460 (2d Cir. 1991), unless, as in *United States v. Schell*, 775 F.2d 559, 565-66 (4th

Cir. 1985), the irregularities carry over to the conduct of the proceeding itself. (Which may be inevitable if an interested party's lawyer was appointed to prosecute a criminal contempt. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 814 (1987) (plurality opinion); see also *United States ex rel. SEC v. Carter*, 907 F.2d 484 (5th Cir. 1990); *In re Hipp, Inc.*, 895 F.2d 1503, 1508-09 (5th Cir. 1990).) If an impartial tribunal determines that the suit was meritorious even though it might not have been brought had it not been for a malicious employee or one who had furnished information to the agency in breach of his fiduciary obligations to a former client, the public should not be deprived of a remedy against an adjudicated wrongdoer.

It is true that Buntrock is formally seeking a stay, not a dismissal, of the SEC's suit. But it is a distinction without a difference, as his lawyer made clear when he said at argument that what he really wanted was a dismissal. Call it a stay or call it a dismissal, Buntrock wants the SEC halted in its tracks until the agency conducts a new investigation and makes a new decision to sue. Such relief if granted would be the equivalent of a dismissal even if it were denominated a stay.

The cases involving prosecutors' conflicts of interest have, as our choice of terminology ("prosecutors") indicates, mainly been criminal. The concern with such conflicts may, however, extend to civil cases brought by government agencies—"civil prosecutions," we may call them—in view of the power of government to harass. Thus in *EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 356-60 (7th Cir. 1988), we said that an egregious conflict of interest on the part of employees of a federal agency might require dismissal of the agency's civil suit—but we quickly added: "if the conflict is found to have infected the whole judicial process." *Id.* at 359. Obviously it is too soon, before trial, for us

or the district judge to determine that the trial of Buntrock has been contaminated by an alleged conflict of interest that occurred before the judicial proceeding was instituted.

Another route to our conclusion is that while Buntrock has a right to a fair trial, a right that could be undermined by a conflict of interest manifested at trial, and a federal criminal defendant has a right not only to a fair trial but also to the presentment of the government's case before trial to a grand jury, a civil defendant like Buntrock does not have a constitutional right to a conflict-free agency determination of whether to sue him civilly unless the conflict laps over into the trial. Cf. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 247-52 (1980). To insist that the SEC's suit be dismissed (in effect) as a sanction for a conflict of interest not yet shown to have affected the conduct of the suit to the defendant's detriment, and so not yet shown to have denied him due process of law, would be to adopt without any statutory basis an exclusionary rule—a rule forbidding the use of a fruit of improper behavior, in this case the use of the results of the investigation of Buntrock as a premise for the SEC's filing suit against him—as a sanction for a nonconstitutional violation. The exclusionary rule is a strongly disfavored sanction for such a violation unless prescribed by statute. E.g., *United States v. Caceres*, 440 U.S. 741, 755-56 (1979); *United States v. Newell*, 239 F.3d 917, 921 (7th Cir. 2001); *United States v. Chaparro-Alcantara*, 226 F.3d 616, 621 (7th Cir. 2000); *United States v. Gilbert*, 942 F.2d 1537, 1542 (11th Cir. 1991). In arguing that the SEC committed improprieties, Buntrock relies on regulations of the agency that require impartiality on the part of its staff. See 17 C.F.R. §§ 200.66, .69, .735-2, 3(a)(2)(iii), (b)(8). Consistently with the cases just cited, we and other courts have made clear that the exclusionary rule is not a proper remedy for a violation of agency regulations. *United States v. Kontny*, 238 F.3d 815, 818 (7th Cir. 2001); *United States v.*

*Hinton*, 222 F.3d 664, 674-75 (9th Cir. 2000); *United States v. Felipe*, 148 F.3d 101, 109 (2d Cir. 1998); *United States v. Hensel*, 699 F.2d 18, 29 (1st Cir. 1983).

But since Buntrock cannot obtain relief equivalent to what he is seeking by this suit by interposing a defense at the threshold of the SEC's suit—cannot, that is, avoid the expense and, it may be, the humiliation of a trial even if the outcome should be favorable to him—it may appear that his remedy at law is inadequate after all. But that would be to confuse adequacy as a matter of procedure with having a substantive right to the relief sought. The victim of a breach of contract could not defend his request for injunctive relief by arguing that his suit for damages would be barred by the statute of limitations. To repeat an earlier point, were Buntrock entitled to head off the trial upon a showing that the SEC's decision to institute a suit against him was contaminated by a conflict of interest, he could obtain that relief just as well by filing a motion in the SEC's suit as by filing an independent suit. If as we believe he is not entitled to head it off by a motion to be heard and decided before trial, he is not entitled to head it off by putting the SEC and the courts to the burden of a separate lawsuit.

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*