# In the
# United States Court of Appeals
## For the Seventh Circuit
———————

Nos. 04-1509 & 04-1637

RIDDLE & ASSOCIATES, P.C.,

*Plaintiff-Appellee*,

v.

JUDITH A. KELLY,

*Defendant.*

APPEALS OF:

EDELMAN, COMBS & LATTURNER,

*Appellant, Cross-Appellee*,

and

DAVID L. HARTSELL and ROSS & HARDIES,

*Cross-Appellants.*

———————

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 C 6435—**Blanche M. Manning**, *Judge.*

———————

ARGUED APRIL 14, 2005—DECIDED JULY 18, 2005

———————

Before COFFEY, RIPPLE, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* This case involves cross-appeals
by two law firms over the imposition of—and failure to

impose—sanctions under 28 U.S.C. § 1927. Edelman, Combs & Latturner ("Edelman") was sanctioned by the district court and ordered to pay the plaintiff, Riddle & Associates ("Riddle"), the attorneys' fees and costs arising out of the underlying declaratory judgment action. In a counterclaim in the same lawsuit, the district court declined the request by David L. Hartsell and Ross & Hardies (collectively, "Ross & Hardies") to impose sanctions against Edelman. Thus, although the firm prevailed in its defense of the counterclaim against it, it was unsuccessful in its pursuit of sanctions against Edelman. In this appeal, the original parties are virtual bystanders while Edelman and Ross & Hardies battle over the issue of whether attorneys' fees and costs were properly awarded or denied.

By way of background, Judith A. Kelly wrote a bad check to a riverboat casino in Aurora, Illinois. Because Kelly failed to cover the $100 check, Riddle, a Utah law firm, was retained to collect the debt. Riddle sent a collection notice to Kelly and demanded payment of $125, which included the original debt and a $25 service charge. Kelly did not respond to the notice for 10 months. In the meantime, rather than pay or dispute the debt, she availed herself of the services of Edelman. Then, on August 17, 2000, Daniel Edelman of that law firm sent a letter to Riddle threatening to sue Riddle under § 1692g of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1962 *et seq.* The Edelman letter claimed that Riddle's collection notice contradicted and overshadowed Kelly's right to dispute the debt. Edelman's letter demanded that Riddle pay $3000 ($1000 to Kelly for damages and $2000 to Edelman for attorneys' fees) in order to avoid a lawsuit.

Riddle's attorney, David Hartsell, a member of the Ross & Hardies law firm, sent a letter to Daniel Edelman on October 4, 2000, rejecting his demand for $3000 and advising that "if you file suit over this matter, we will most assuredly seek sanctions . . . on the ground that such lawsuit was brought in bad faith and for purposes of harassment." Hartsell also demanded $500 in attorneys' fees and

costs and noted that if payment was not received within one week, his client would "pursue [its] rights through all legally available means."

Edelman did not respond to Hartsell's letter, and on October 17, 2000, Riddle brought an action against Kelly under the Declaratory Judgment Act, 28 U.S.C. § 2201. Riddle asked the court to declare that its collection letter did not violate § 1692g of the FDCPA by "overshadowing or contradicting" Kelly's right to dispute the debt.

On the next day, Kelly filed an answer in the declaratory judgment action. In addition, she asserted a counterclaim against Riddle, alleging that the $125 demand letter to Kelly contained a false threat of litigation in violation of § 1692e. In the counterclaim Riddle did not raise the § 1692g overshadowing issue. Kelly also asserted an additional counterclaim against Ross & Hardies, claiming that the letter Hartsell sent to Edelman on October 4 was an attempt to collect money from Kelly and therefore violated the FDCPA.

On September 28, 2001, the district court granted summary judgment in favor of Riddle on its declaratory judgment claim, finding that Riddle's letter was "virtually identical" to the "safe haven" letter that this court suggested in *Bartlett v. Heibl*, 128 F.3d 497, 501-02 (7th Cir. 1997).

With regard to the FDCPA counterclaim against Ross & Hardies, the court granted its motion to dismiss because the October 4 letter was directed to Edelman, not Kelly; therefore, the letter did not come within the scope of the FDCPA.[1]

---

[1] As to the FDCPA counterclaim against Riddle alleging a false threat of litigation, the court denied Riddle's motion for summary judgment. That remaining counterclaim went to trial and Riddle won a jury verdict in its favor.

On October 11, 2001, pursuant to a motion filed by Riddle, the district court imposed sanctions against Edelman, finding that Edelman "was trying to extort money from Riddle by saying it would go away for $3000, even though it could not have believed that its overshadowing argument had any chance of success in court." Further, the court found that Edelman's "actions in threatening to file a baseless suit and opposing the motion for summary judgment as to the overshadowing claim were objectively and subjectively egregious and multiplied the proceedings unreasonably and vexatiously."

The court denied the petition for sanctions against Edelman that was filed by Ross & Hardies, reasoning that although the FDCPA counterclaim against Ross & Hardies was not a winner, it was "not in the same league as what the court can only characterize as an extortion attempt by [Edelman] based on the frivolous but hotly litigated overshadowing argument"; thus, fees and costs were not awarded to Ross & Hardies in connection with its successful defense of the FDCPA claim against the firm.

Subsequent to the resolution of all other claims, Kelly's motion for reconsideration was denied, and on February 20, 2004, the court ruled that Riddle's fee petition was reasonable and Edelman was ordered to pay Riddle $18,037.22 in attorneys' fees and costs.

### Riddle's Request for Sanctions

The district court sanctioned Edelman pursuant to 28 U.S.C. § 1927. We review this order under the deferential abuse of discretion standard. *See Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989). "This court need only inquire whether any reasonable person could agree with the district court's sanction award." *Id.*

The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who

create unnecessary costs also bear them." *Id.* (citations omitted). The statute reads as follows: "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *Kapco*, 886 F.2d at 1491 (quotation omitted).

The initial letter from Edelman accused Riddle of violating a section of the FDCPA which requires that the debt collector provide the consumer with a "validation notice" explaining the right to dispute the debt or to demand verification of the debt. *See* 15 U.S.C. § 1692g(a). In relaying this information, the debt collector has an "implied duty to avoid confusing the unsophisticated consumer [that] can be violated by contradicting or 'overshadowing' the required notice." *Bartlett*, 128 F.3d at 500.

Because the words "contradicting or overshadowing" do not provide much guidance to debt collectors, we set forth in *Bartlett* a sample form of explicit language that would provide a proper validation notice. *Id.* at 501-02. Then we instructed that "[d]ebt collectors who want to avoid suits by disgruntled debtors standing on their statutory rights would be well advised to stick close to the form that we have drafted. It will be a safe haven for them, at least in the Seventh Circuit." *Id.* at 502.

It bears repeating that the district court found that the collection notice Riddle sent to Kelly was "virtually identical" to the *Bartlett* safe haven letter. We certainly agree. Edelman apparently did not believe what we said in *Bartlett*—we do. There was no conceivable basis for a § 1692g claim.

In light of Edelman's letter, and with no resolution in sight, Riddle filed a declaratory judgment action asking for a judicial determination that its collection letter was protected by the *Bartlett* safe haven. Edelman now claims that by the time Riddle filed its declaratory judgment action, Kelly had decided not to bring suit against Riddle, and that "we would not be here today had Riddle decided to leave well enough alone." The district court aptly noted that this argument is "analogous to a matador waving a red cape at a bull and then professing to be surprised when the bull charges him."

Edelman further argues that Riddle should not have been permitted to file the declaratory judgment action because it should have waited for Kelly to file suit and then used its arguments as a defense to the claim. Edelman cites *Buntrock v. SEC*, 347 F.3d 995, 997 (7th Cir. 2003), for the proposition that "defendants must not be allowed to turn every case in which there is a defense into two cases." Buntrock's situation, however, was not the same as Riddle's. Buntrock filed a preemptive suit, asking the court to stay a lawsuit that the SEC was preparing to file against him. *Id.* at 996. We found that there was no subject matter jurisdiction for such a claim. *Id.* In contrast, Riddle did have a legally cognizable basis on which to file the declaratory judgment action. *See* 28 U.S.C. § 2201 (stating that "any court . . . may declare the rights and other legal relations of any interested party seeking such declaration").

Although Edelman alleges otherwise, Kelly did not ever "clearly abandon" her overshadowing claim. It is true that Edelman did not affirmatively raise the issue in Kelly's counterclaim, but he did nothing to make it clear to the district court or Riddle that Kelly was not contesting summary judgment on the issue of overshadowing. In fact, Edelman argued in Kelly's memorandum in opposition to Riddle's motion for summary judgment on the overshadowing claim that Riddle's motion was "without merit." Edelman could

have easily moved to dismiss the summary judgment action as moot. Instead, Edelman multiplied the proceedings by filing counterclaims and contesting summary judgment.

Edelman insists that Kelly never litigated the overshadowing issue and thus she cannot be responsible for fees relating to it. We find that Edelman is responsible for causing the suit to be filed and for allowing the litigation to continue when it knew that Kelly could not win. When Edelman demanded $3000 to release a blatantly frivolous claim, the firm pursued a path that it should have known was improper; therefore, its conduct was "objectively unreasonable and vexatious." *Kapco*, 886 F.2d at 1491 (quotation omitted). Because we find that a reasonable person could agree with the district court's decision to order Edelman to pay fees and costs relating to the overshadowing issue, the district court's decision was proper and we will affirm the sanction award.

### Ross & Hardies's Request for Sanctions

We now address the request for fees relating to the counterclaim against Ross & Hardies. As explained previously, Kelly's counterclaim alleged that Hartsell's October 4 letter to Edelman requesting $500 in attorneys' fees made a "claim for money" against Kelly that violated the FDCPA. The district court dismissed this claim with little discussion because the demand was made "on Kelly's lawyer [Edelman], not on Kelly herself," and therefore provided no basis for an FDCPA claim.

Edelman argues that although the letter was addressed to Daniel Edelman, it was in reference to Kelly's case and so the demand for money was directed to her. A close read of the letter, however, makes it clear that Ross & Hardies was demanding $500 in attorneys' fees from Edelman, not from Kelly.

The letter points out that Edelman surely must be familiar with the *Bartlett* safe haven letter, and that if Edelman had read Riddle's letter with any care, he would have seen "that it is virtually identical to Judge Posner's 'safe harbor' letter." The Hartsell letter further states: "We find it difficult to believe that this is an honest mistake, coming from such an experienced FDCPA practitioner as yourself. We also reject your claim that you have incurred $2000 in attorneys' fees for, at most, reviewing a one-page collection letter and then writing a three-paragraph demand letter." Edelman, not Kelly, was the "experienced FDCPA practitioner." There is no doubt that Edelman's conduct produced the demand from Ross & Hardies, for as the letter stated, "[w]e believe that your letter to Riddle is what gives rise to a cause of action . . . ."

The FDCPA was created to protect consumers from abusive practices by debt collectors. *See* 15 U.S.C. § 1692(e). "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Because the letter from Hartsell was not directed to the consumer, Kelly, and was distinct from any debt, the FDCPA is not implicated.

Again, we find that a reasonably careful attorney should have known that the counterclaim against Ross & Hardies was without merit. *See Kapco*, 886 F.2d at 1491 (quotation omitted). The claim multiplied the proceedings unreasonably and vexatiously, and "those who create unnecessary costs [must] also bear them." *Id.* In fact, "[s]o clear is it that [Edelman] filed a frivolous [counterclaim] . . . in order to complicate this already far too complicated and absurdly protracted litigation, to the cost of [Riddle and its counsel], that the district judge committed an abuse of discretion in refusing to sanction" Edelman under § 1927. *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 654 (7th Cir. 2001). Thus, contrary to the decision of the district court, Ross & Hardies is entitled to fees and costs relating

to its successful defense of the counterclaim against the firm. Edelman's conduct regarding Ross & Hardies was in the same vein as its conduct with regard to Riddle. The district court correctly awarded sanctions against Edelman and in favor of Riddle; however, the district court abused its discretion in arriving at a different conclusion with regard to the award of sanctions in favor of Ross & Hardies.

## Conclusion

For the reasons set forth in this opinion, we AFFIRM the district court's decision to grant Riddle's motion and sanction Edelman. We find that $18,037.22 is a reasonable and appropriate award for attorneys' fees and costs relating to the declaratory judgment claim. We also find that Edelman should have been sanctioned and required to pay the fees and costs relating to the counterclaim against Ross & Hardies; we REVERSE the denial of Ross & Hardies's request for fees and costs and REMAND this matter to the district court for a determination, consistent with this opinion, of what sanctions are appropriate.

A true Copy:

    Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*