# United States Court of Appeals

## For the First Circuit

No. 05-2794

MARKS 3-ZET-ERNST MARKS GMBH & CO. KG,

Plaintiff, Appellant,

v.

PRESSTEK, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, U.S. District Judge]

Before

Torruella and Lynch, Circuit Judges,
and Young,[*] District Judge.

Kevin M. Fitzgerald, with whom John E. Friberg, Jr. and Nixon Peabody LLP were on brief, for appellant.
James D. Rosenberg, with whom Arpiar G. Saunders, Jr. and Shaheen & Gordon, P.A. were on brief, for appellee.

July 11, 2006

---

[*] Of the District of Massachusetts, sitting by designation.

**LYNCH**, **Circuit Judge**.  This case raises some unusual issues about actions seeking to compel international arbitration.

The plaintiff, Marks 3-Zet-Ernst Marks GMBH ("Marks"), a German company, and the defendant, Presstek, Inc. ("Presstek"), a Delaware corporation with its principal place of business in New Hampshire, in 2000 entered into a commercial agreement, which included an arbitration clause.

The arbitration clause is governed by Chapter Two of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 201-208, which implements the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, reprinted following 9 U.S.C. § 201 (ratified by the United States on September 30, 1970).  See Ledee v. Ceramiche Ragno, 684 F.2d 184, 186 (1st Cir. 1982).  Chapter One of the FAA, 9 U.S.C. §§ 1-16, applies to proceedings under Chapter Two, to the extent that there is no conflict.  See 9 U.S.C. § 208.

The district court dismissed Marks' petition to compel arbitration because it understood the relief Marks was seeking was unavailable on Marks' pleadings.  In its petition, Marks mentioned only a particular arbitral body, the Permanent Court of Arbitration (PCA) at The Hague in the Netherlands, and in a later pleading, it stated that "[t]he order sought from this court by Marks . . . will address and resolve the PCA's uncertainty" as to "whether it has

-2-

the authority to act."  Based on these pleadings, Marks sought an order to compel arbitration of the dispute before the PCA, under a set of rules which the PCA had already stated were not the rules that would allow it to exercise jurisdiction over the arbitration, under the PCA's own procedural guidelines.  After dismissal of its case, Marks then attempted to change course, on a motion to the district court for reconsideration.  The court denied the motion. We affirm the judgment of dismissal.

## I.

The basic facts relevant to this appeal are undisputed. Presstek and Marks supply products for the printing industry.  In December 2000, Presstek and Marks entered into a contract whereby Marks agreed to market Presstek's products in parts of Europe. Under the contract, neither party was permitted to terminate the contract for three years, except under certain conditions.

Under Section 10(g) of the contract, the parties agreed to submit disputes to arbitration:

> Applicable Law and Jurisdiction.  Any dispute . . . between the Parties arising out of or relating to this Agreement which cannot be settled amicably shall be referred to and determined by arbitration in the Hague under the International Arbitration rules.   The ruling by the arbitration court shall be final and binding and the Parties undertake to abide by and to carry out the award immediately and voluntarily.  In the event that such award is not immediately abided by and carried out, the award of whatever nature may be enforced without review in any court of competent jurisdiction.   The arbitration award shall

> determine which Party shall bear the expenses
> of the arbitration or the portion thereof
> which each Party shall bear.

The arbitration clause was poorly drafted:  First, the clause does not identify the specific arbitral body at The Hague that would adjudicate any dispute.  Second, the contract language ("the International Arbitration rules") suggests that a particular set of arbitration rules would govern the dispute; but, as it turns out, there are no rules called the "International Arbitration rules."

On April 4, 2002, Presstek provided notice that it wished to terminate the contract.  According to Marks, this termination constituted a breach of contract.  Marks thereafter attempted to have Presstek agree to arbitrate the dispute, but to no avail. Marks first asked Presstek to arbitrate the dispute under the UNCITRAL Arbitration Rules[1] on November 29, 2002.  This request led to negotiations, which were ultimately unsuccessful.

Marks made a second request for arbitration to Presstek on March 27, 2003, but Presstek did not respond.  The record does not contain either the November 2002 or March 2003 requests by Marks, and does not reveal whether Marks asked Presstek to arbitrate their dispute before a particular forum.

---

[1] UNCITRAL is the United Nations Commission on International Trade Law, which has issued arbitration rules.  See Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 633 n.17 (1985); Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 282 (5th Cir. 2004).

-4-

When Presstek did not respond, Marks did not go to court to seek to compel arbitration or alternatively to sue for breach of contract.

A.        Proceedings Before the PCA

After Presstek did not respond to its March 2003 arbitration request, Marks sent letters to the PCA, on June 4 and July 31, 2003, asking the PCA to designate an "Appointing Authority" that would initiate arbitration proceedings and appoint arbitrators.  In its application, Marks asserted to the PCA that under the arbitration clause "[i]t is evident from the choice of The Hague as the forum for the arbitration that the 'International Arbitration Rules' referred to in the clause are those formulated by UNCITRAL, since these authorize the Secretary-General of the PCA based in The Hague to appoint members to the tribunal or to nominate a so-called Appointing Authority."

On August 4, 2003, after receipt of Marks' request, an Assistant Legal Counsel of the PCA sent a letter to Presstek, with a copy to Marks, informing Presstek of the arbitration request by Marks.  The letter raised questions about the competence of the PCA to act as an arbitrator in the case:

> Prior to acting . . . , the Secretary-General [of the PCA] first satisfies himself, on the basis of a prima facie screening of the documentation submitted by the parties, that he is competent to act.  The Secretary-General's competence may derive from the parties' agreement to the application of the UNCITRAL Arbitration Rules, Articles 6 and 7

of which describe his role, or from any other agreement that calls for him to act.

The PCA letter noted that the language in the parties' arbitration referred only to "the International Arbitration rules" and "The Hague as the place of arbitration."  The PCA letter asked Presstek to provide its comments with respect to Marks' application, after which the matter would be submitted to the Secretary-General of the PCA for consideration.

Presstek, in an August 14, 2003 letter to the PCA requesting an extension of time, noted that its basic position was that a clear agreement to apply UNCITRAL Arbitration Rules was required before the PCA could exercise jurisdiction over the arbitration, that there was no such clear agreement, and that the reference to "International Arbitration rules" in the parties' contract was too vague on the point.

The PCA granted Presstek's request for an extension, in a letter on August 18, 2003, and noted Presstek's objection.  The letter reiterated the PCA's policy that "before acting in matters such as this, the Secretary-General of the PCA first satisfies himself, on the basis of a prima facie screening of the documents submitted to him, that he is competent to act."  The letter also noted that "[w]hen the Secretary-General is not satisfied of his competence to act, parties may, of course, seek implementation of their arbitration agreement elsewhere or before the appropriate national courts."  The PCA invited Presstek "to comment on whether

it wished to agree to the application of the UNCITRAL Arbitration Rules in the present dispute."

On October 20, 2003, Presstek filed its comments with the PCA. It refused to stipulate to application of the UNCITRAL Arbitration Rules and reiterated its position that the contract was not sufficiently clear as to whether the UNCITRAL rules would apply and that the PCA should therefore decline jurisdiction. Presstek argued that only a court, and not the PCA, could resolve the ambiguities and concluded that the PCA should decline to arbitrate the matter "until such time as a . . . court indicates that it may." The record does not contain any reply by Marks.

On October 21, 2003, the PCA, in a letter to the parties, stated that the Secretary-General had considered the parties' submissions and concluded that it did not have the competence to act because, based on its interpretation of the arbitration agreement, the parties had not agreed to the application of UNCITRAL rules:

> The Secretary-General considers that he may designate an Appointing Authority pursuant to the UNCITRAL Arbitration Rules only when the parties to a contract have agreed that disputes in relation to that contract shall be referred to arbitration under the UNCITRAL Arbitration Rules. With respect to the dispute arising from the parties' [contract], the Secretary-General is not satisfied, on the basis of a prima facie screening of the documentation submitted by the parties, that he is competent to act in this matter.

The letter concluded, however, by inviting the parties "to seek the interpretation of their arbitration agreement from any court having jurisdiction." It noted that arbitration at the PCA might be possible, "[g]iven that paragraph 10(g) of the Agreement specifies The Hague as the place of arbitration."

On March 25, 2004, Marks requested Presstek to arbitrate the dispute again, this time under the Netherlands Arbitration Act. Again, the record does not contain this request, or reveal whether Marks had asked for arbitration at a particular forum, either the PCA or elsewhere. Presstek did not respond to this request.

B.      Proceedings before the District Court

Marks did not challenge the PCA's refusal to hear the case, either at the PCA itself or in a court in the Netherlands, or attempt to arbitrate the dispute in any other forum at The Hague. It did not immediately seek an interpretation of the agreement by a court of competent jurisdiction, as the PCA had invited it to do. Instead, it waited nearly eighteen months, until April 5, 2005, to file a motion to compel arbitration in U.S. District Court in New Hampshire under the New York Convention, as implemented by 9 U.S.C. §§ 4 and 206.

Marks' petition was filed one day after the New Hampshire three-year statute of limitations on contract actions had expired, assuming that the cause of action accrued on April 4, 2002, the date Presstek provided the termination notice to Marks. Marks, for

its part, disputes that the New Hampshire limitations period applies, instead arguing that the New York Convention requires application of the Netherlands' statute of limitations, as the parties agreed that the Netherlands would be the situs for arbitration.

In its petition to compel arbitration, Marks asked for an order "direct[ing] that arbitration proceed in the manner set forth in the Agreement: in The Hague, and that the Court order such arbitration to proceed under the American Arbitration Act's International Rules." (emphases added). Marks also requested that the court order Presstek to submit to arbitration; hold a hearing on Marks' petition under Section 4 of the FAA; and award "costs, interest, attorneys' fees and such other and further relief as the Court deems appropriate and just." As to the proceedings before the PCA, Marks stated only that "[t]he President of the PCA . . . concluded that the application of the [UNCITRAL] Rules to the Agreement was not appropriate and gave no further opinion with respect to the Agreement."

There were a number of problems with Marks' petition. Although Marks stated that it wanted arbitration at "The Hague" (where a number of groups provide arbitration), the only arbitral body mentioned in the petition was the PCA. Furthermore, there is no set of rules called "the American Arbitration Act's International Rules." It was not until its motion for

reconsideration that Marks clarified that it "intended to reference the American Arbitration <u>Association's</u> international rules." But whatever rules Marks intended to reference, Marks' petition did not take the position that the parties' arbitration clause contemplated application of the UNCITRAL Arbitration Rules, which, based on the PCA letters, were the only rules which would give the PCA the competence to act in the parties' dispute.

Thus, a natural reading of the complaint was that Marks was seeking arbitration of the dispute at the PCA under rules which the Secretary-General of the PCA had already stated could not give the PCA the competence to act. The district court, in an August 9, 2005 order, gave fair warning of its concern that it would be unable to grant the relief Marks was seeking, using the language of mootness. It ordered Marks to show cause why its petition to compel arbitration should not be dismissed.[2]

Marks filed a memorandum in response on September 1, 2005. Mark stated that "[t]he order sought from this court by Marks . . . will address and resolve the PCA's uncertainty" as to

---

[2] The August 9, 2005 order also denied an earlier motion by Presstek to dismiss the petition. Presstek had argued that the PCA's decision not to hear the case was an "award" within the meaning of the FAA, that the only court with the competence to overturn that award under the New York Convention was a court in the Netherlands, and that Marks' petition, properly construed as a motion to vacate an arbitral award, was untimely. The district court rejected these arguments, finding that the PCA's refusal to arbitrate the dispute was not an "award" under the New York Convention and that Marks' petition was timely under the FAA. Presstek does not appeal these determinations.

"whether it has the authority to act." Marks relied on the statement in the PCA letter that "the parties are invited to inform the PCA should they wish to utilize the services of the PCA in the administration of the case." Based on its reading of the PCA letter, Marks argued that it was in truth only seeking the interpretation of the agreement which the PCA had invited -- an interpretation as to which arbitral rules to apply -- and that a dispute about that very question could not render the case moot or preclude the relief Marks sought. Marks did not seek to amend its claims for relief in the petition to compel arbitration.

The district court dismissed Marks' petition on September 20, 2005, on the grounds that "the relief Marks seeks, an order requiring Presstek to arbitrate their dispute at the PCA under the American Arbitration Act's International Rules, is unavailable." The district court read the PCA letter to say that the PCA will "proceed with arbitration <u>only</u> if the parties have agreed to arbitrate under the UNCITRAL Arbitration Rules." The court observed that Marks "did not plead a claim seeking to interpret the agreement to determine which arbitration rules would apply," did not "include any allegations as to the meaning of the parties' agreement with respect to which arbitration rules would apply," nor "even suggest[ed] that the parties agreed to the UNCITRAL Arbitration Rules."

Marks moved for reconsideration on October 4, 2005, under Fed. R. Civ. P. 59(e). It argued that the district court was misreading the PCA letter, and that the PCA would "assist parties . . . pursuant to the order of any court with jurisdiction" even if the parties did not agree to apply the UNCITRAL Arbitration Rules.

For the first time, Marks clarified that the PCA letter was immaterial. It was immaterial because arbitration could be had in either a different forum or under a different set of arbitration rules:

> Marks has prayed that, following the required hearing or trial, the AAA International Rules apply, given that they are closest to the expressed intent of the parties in their agreement. . . . However, Marks has also asked in its Petition for the Court to grant whatever "relief it deems just and appropriate" consistent with the parties' agreement to arbitrate, the New York Convention and the strong state and federal policies in favor of arbitration. <u>It is certainly possible that, following a hearing and trial if necessary, the Court may find an alternative location in The Hague, and/or rules, appropriate in order to effectuate the parties' agreement to arbitration.</u>

(emphasis added and citation omitted). Marks noted that there were other arbitral bodies at The Hague besides the PCA that could hear the case, and argued that the district court was obligated under the New York Convention and Section 4 of the FAA to hold a hearing or a trial to determine "the nature of the parties' arbitration agreement as it relates to any ambiguous terms, including but not

-12-

limited [to] which rules to apply and the agency and organization to preside or supervise."

This was not the relief clearly sought in the original complaint. Nor was this relief sought after the district court warned Marks of the problems with how it had framed this case. This theory was clearly articulated for the first time some three-and-a-half years after the contract dispute arose, two years after the PCA had declined to accept competence over the arbitration, and six months after Marks had filed its federal court petition to compel arbitration.

The district court denied Marks' motion for reconsideration. Marks appeals, arguing (1) that the district court erred in its initial conclusion that it could not grant the relief requested, and (2) that the district court should, nonetheless, have held a hearing to find a different forum at which to order the arbitration, under perhaps a different set of rules.

II.

We have jurisdiction to hear this appeal from a final order, under 28 U.S.C. § 1291.[3] We review de novo a district

---

[3] Presstek argues, as it did below, that we lack statutory jurisdiction, because Marks has not been "aggrieved by the alleged failure, neglect, or refusal of [Presstek] to arbitrate," which is a prerequisite to an order compelling arbitration under 9 U.S.C. § 4. According to Presstek, absent a "failure, neglect, or refusal" by it to arbitrate, there is not a justiciable case or controversy. The district court did not address this argument. Marks has alleged that Presstek ignored requests to arbitrate on at least two occasions, creating at least some question, on this

-13-

court's refusal to compel arbitration. InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003). We review the denial of the motion to reconsider for abuse of discretion. Aybar v. Crispin-Reyes, 118 F.3d 10, 15 (1st Cir. 1997).

A. Propriety of the Original Order of Dismissal

1. Inability to Grant the Relief Requested

Marks' argument that the district court erred in holding that the relief Marks sought was unavailable is largely based on Marks' reading of the October 21, 2003 letter from the PCA, which was rejected by the district court. Marks argues that the district court misconstrued the PCA letter, and that the correct reading is "that the PCA invited the parties to complete the administration of the case (1) if they stipulate to the UNCITRAL Rules, or, (2) if a court of competent jurisdiction . . . interpreted the arbitration provision of their Agreement (no matter what jurisdiction, venue or rules the Court designates under the agreement)." (emphasis added).

Marks' reading of the PCA letter is strained at best. The letter states in clear terms that the PCA would be competent to act in these circumstances "only when parties to a contract have

_____

record, as to whether Presstek has failed, neglected, or refused to arbitrate within the meaning of 9 U.S.C. § 4. We do not resolve that question, or whether this requirement is jurisdictional in nature, or whether the requirement under 9 U.S.C. § 4 applies at all in the context of the New York Convention. We affirm on different grounds.

-14-

agreed that disputes in relation to that contract shall be referred to arbitration <u>under the UNCITRAL Arbitration Rules</u>." (emphases added). Indeed, Marks put into the record the published procedural guidelines of the PCA, which support the court's reading: the guidelines state that "[t]he request for designation of an appointing authority . . . should be accompanied by . . . [a] copy of the arbitration clause or agreement <u>establishing the applicability of the UNCITRAL Arbitration Rules</u>." (emphasis added)

The district court properly rejected Marks' reading of the letter. It did not clearly err in concluding that the only relief Marks had sought, prior to its motion for reconsideration, was arbitration before the PCA under the American Arbitration Act's International Rules. Nor did the court err in finding that that relief was unavailable, or in dismissing the petition on that ground. There was simply no basis, given the PCA's letter, for the district court to order arbitration before the PCA under any set of rules other than the UNCITRAL Arbitration Rules. Marks has never suggested the PCA was a party or that the court could order the PCA to do that which it already said it had no authority to do.

The district court framed the question as one of mootness. Mootness doctrine, in the Article III case or controversy sense, may be an imprecise fit to the situation here, but captures the idea that courts do not consider abstract issues. "[M]ootness doctrine is rooted largely in the idea that courts,

-15-

because of their distinct institutional competence and role, should not decide abstract questions of law divorced from real factual controversies." Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 55 (1st Cir. 2004). It is sufficient to simply frame the question as whether the district court could have afforded the relief for which Marks had asked. See Church of Scientology v. United States, 506 U.S. 9, 12 (1992) ("[I]f . . . it [is] impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (quoting Mills v. Green, 159 U.S. 651, 653 (1895))); see also Raytheon Co. v. Ashborn Agencies, Ltd., 372 F.3d 451 (D.C. Cir. 2004) (dismissing petition to compel arbitration where there was no Article III standing, in part, because the requested relief would not alleviate the claimed injury-in-fact).

### 2. Marks' Request for a Hearing

Marks argues that it had requested a hearing in its petition to compel arbitration, and that the court was obligated, as an initial matter, to hold a hearing once the petition was filed. It relies on, 9 U.S.C. § 4, which provides:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in

> issue, the court shall proceed summarily to the trial thereof.

The argument is based on the unwarranted assumption that Marks' petition had sought relief which the district court could provide.

Moreover, even in its own terms, the argument is unpersuasive. Initially, it is not clear that under 9 U.S.C. § 4, an evidentiary hearing is required. Marks has assumed that the "shall hear the parties" statement in 9 U.S.C. § 4 refers to a live evidentiary hearing. That may not be so. Rather, a "hearing" on the papers may be all that is required. See Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co., 706 F.2d 155, 159 (6th Cir. 1983); cf. United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 240 (1973) (holding, under the Administrative Procedure Act, that "the term 'hearing' as used therein does not necessarily embrace either the right to present evidence orally and to cross-examine opposing witnesses, or the right to present oral argument to the agency's decisionmaker").

But even indulging Marks' assumption that 9 U.S.C. § 4 is satisfied only by an evidentiary hearing, such a hearing is required only if there is a genuine issue of material fact for which a hearing would be necessary. See Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp., 347 F.3d 665, 671 (7th Cir. 2003) ("A trial to determine arbitrability is required, however, only if the issue that an evidentiary hearing would resolve is

fairly contestable."); Cincinnati Gas & Elec. Co., 706 F.2d at 159; cf. Mowbray v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 795 F.2d 1111, 1115 n.7 (1st Cir. 1986) (deciding whether an agreement to arbitrate existed under 9 U.S.C. § 4 where there had been "no request for an evidentiary hearing and no dispute regarding the moving party's factual allegations"). Requiring the district court to hold a hearing when there is no genuine issue of material fact would "defeat[] an essential goal of arbitration, which is the simplification and expedition of dispute resolution." Am. Int'l Specialty Lines, 347 F.3d at 671.

Here, there was no genuine issue regarding "the making of the agreement for arbitration" or "the failure to comply therewith." The issue concerned the inability of the district court to grant the relief Marks stated it was seeking -- arbitration at the PCA under the American Arbitration Act's International Rules -- because the requested relief would not resolve the dispute.

B.      Arguments in Motion for Reconsideration Seeking Arbitration at a Different Forum

Even after the district court made clear, in its August 9 order, its concerns about its inability to grant the relief sought, Marks did nothing in its filings prior to the September 20 order to demonstrate that it was seeking relief that the district court could grant.

Instead, Marks waited until after the district court had ruled against it on September 20, and then attempted to alter course in its motion for reconsideration, from seeking arbitration at the PCA under the American Arbitration Act's International Rules, to seeking arbitration at some other forum or under some other set of arbitration rules, and requesting a hearing to sort out the possibilities. Marks says this is acceptable because its petition said in the prayer for relief that it was seeking "such other and further relief as the Court deems appropriate and just." Not so. That does not explain why Marks did not make the argument after the court first raised its concerns. In any event, the catch-all provision, standing alone, does not give notice that Marks' theory was different than that articulated in the rest of the complaint. A trial court is not required to guess what relief a party wants or why it wants it.

These new arguments were made clear for the first time in the motion for reconsideration, and the "general rule" for motions for reconsideration under Fed. R. Civ. P. 59(e) "is that the moving party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'" Marie v. Allied Home Mortgage Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005) (quoting Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 146 n.2 (1st Cir. 2004)). A motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures and it

certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." See Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005) (internal quotation marks omitted) (quoting Aybar, 118 F.3d at 16).

Under this general rule, Marks' attempt to change course fails; the new arguments Marks raised in its motion for reconsideration could have easily been presented to the district court prior to its September 20, 2005 order dismissing the petition, but were not. See Cozza v. Network Assocs., Inc., 362 F.3d 12, 16 (1st Cir. 2004) (holding that party could not bring a successive interlocutory appeal of a denial of a motion to compel arbitration "based upon the same arguments . . . it could have appealed earlier, but did not").

Marks points to the general federal policy in favor of arbitration, the FAA, and the New York Convention. It argues that the district court was required to overlook the failings of Marks' petition and nonetheless try to find a different forum and possibly different rules for the arbitration, and to hold an evidentiary hearing under 9 U.S.C. § 4 in order to do so. In essence, Marks argues that the policies in favor of arbitration are so strong that they trump the normal operation of the Federal Rules of Civil Procedure. That is not so.

Marks relies on Chapter One of the FAA, 9 U.S.C. § 4, quoted above.  Marks argues that under this provision, the court was required to hold a hearing or a trial to determine which agency should preside and pursuant to what rules.  This argument was first made clear in the motion for reconsideration, and fails under the general rule that arguments that could have been raised before may not be raised for the first time in a motion for reconsideration.  Marks has provided no authority that 9 U.S.C. § 4, or any other provision of the FAA, creates an exception to this general rule.

Marks also relies on the New York Convention.  It points to cases which set out a four-part test for determining whether an international arbitration agreement can be enforced by a federal court under the New York Convention.  See DiMercurio v. Sphere Drake Ins., PLC, 202 F.3d 71, 74 & n.2 (1st Cir. 2000); Ledee, 684 F.2d at 186-87.  Marks argues that the agreement here meets this four-part test and that, therefore, the court must order arbitration unless there is a finding that the arbitration provision is "null and void, inoperative or incapable of being performed."  DiMercurio, 202 F.3d at 74 (quoting New York Convention, supra, art. II, § 3); see also Intergen N.V., 344 F.3d at 141.  The argument is a non sequitur: the four-part test is used to determine whether a particular arbitration agreement falls under

the terms of the New York Convention.[4]  The issue here is not whether the agreement falls under the Convention, but whether the relief initially requested by Marks was available, and whether Marks' attempt to change its position on a motion for reconsideration should be allowed, despite the normal rules of litigation.  The New York Convention and cases applying the Convention do not answer that question.

In a last-ditch effort to save itself from dismissal, Marks turns to the broad federal policy in favor of arbitration, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983), to support its argument that it should be allowed a hearing to sort out the appropriate forum and rules for the arbitration.  The Supreme Court has noted that the policy favoring arbitration "applies with special force in the field of international commerce."  See Restoration Pres. Masonry Inc. v. Grove Eur. Ltd., 325 F.3d 54, 60 (1st Cir. 2003) (internal quotation marks omitted) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985)).

---

[4] The test used is as follows: "(1) Is there an agreement in writing to arbitrate the subject of the dispute? (2) Does the agreement provide for arbitration in the territory of a signatory of the Convention? (3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial? (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?" See Ledee, 684 F.2d at 186-87 (internal citations omitted).

But the broad policy favoring arbitration -- even in the context of international arbitration -- does not create an exception to the general rule that a motion to reconsider does not allow a party "to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Aybar, 118 F.3d at 16. The goal of the FAA was "to make arbitration agreements as enforceable as other contracts, but not more so." Paul Revere Variable Annuity Ins. Co. v. Kirschhofer, 226 F.3d 15, 25 (1st Cir. 2000) (internal quotation marks omitted) (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967)); see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989) ("[The FAA] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."). "It follows inexorably from that statement that the principle of resolving doubts in favor of arbitration is 'subject to constraints.'" Paul Revere, 226 F.3d at 15 (quoting Coady v. Ashcraft & Gerel, 223 F.3d 1, 9 (1st Cir. 2000)); see also Restoration Pres. Masonry, 325 F.3d at 60 ("The policy in favor of arbitration does not supersede basic contract principles, however.").

Indeed, the reasons upon which the federal policies regarding international arbitration are based tend to work against Marks' position:

> Arbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process. . . . In the context of international contracts, the opportunities for increasing the cost, time, and complexity of resolving disputes are magnified by the presence of multiple possible fora, each with its own different substantive rules, procedural schematas, and legal cultures. This is fertile ground for manipulation and mischief, and acceptance of [plaintiff's] arguments would lead to the very problems the [New York] Convention sought to avoid.

Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 223 (1st Cir. 1995); see id. at 222 ("[U]ltimately, the strong policy reasons favoring arbitration and underlying the adoption of the Convention would be undercut, not served, by acceptance of [plaintiff's] position."); see also Weiner v. Gutfreund (In re Salomon Inc. Shareholders' Derivative Litigation), 68 F.3d 554, 557-58 (2d Cir. 1995) ("Although the federal policy favoring arbitration obliges us to resolve any doubts in favor of arbitration, we cannot compel a party to arbitrate a dispute before someone other than the NYSE when that party had agreed to arbitrate disputes only before the NYSE and the NYSE, in turn, exercising its discretion under its Constitution, has refused the use of its facilities to arbitrate the dispute in question.").

Marks made a strategic choice (and continued to make the strategic choice) to rely on its reading of the PCA letter and seek arbitration at the PCA under the American Arbitration Act's (or Association's) International Rules, and it must live with the

-24-

consequences of that choice.  See Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 6 (1st Cir. 2001) ("Where a party makes a considered choice, though it may involve some calculated risk, he 'cannot be relieved of such a choice because hindsight seems to indicate to him' that, as it turns out, his decision was 'probably wrong.'"  (quoting Ackermann v. United States, 340 U.S. 193, 198 (1950))).  Had Marks chosen a different strategy, a different outcome may have been warranted.  But to allow Marks to avoid the consequences of its strategic decision would lead to delay and manipulation.

## III.

The district court's dismissal of the petition to compel arbitration is affirmed.  Costs are awarded to the defendant.


**Concurrence follows.**

**YOUNG, District Judge, (Concurring)**. This seems to me an important decision.  I join its reasoning and result, writing separately simply to point out that the result is imposed on a record somewhat more ambiguous than the majority lets on.  Marks petitioned for an order "direct[ing] that arbitration proceed in the manner set forth in the Agreement: in The Hague, and that the Court order such arbitration to proceed under the American Arbitration Act's International Rules."  App. at 15.  Since there is more than one arbitral body in The Hague -- a fact the majority does recognize, see supra at 9 -- it is too much of a stretch for the majority to say "Marks sought an order to compel arbitration of the dispute before the PCA . . . ."  Supra at 3 (emphasis added); see also supra at 18.  Indeed, Marks had argued in its memorandum addressing the district court's mootness concerns that arbitration could be proper "at another arbitral body".

Contrary to the majority's description, it was the district judge who drew this inference from Marks's vague pleading, which itself did not expressly request the needed interpretation of the ambiguous arbitration clause.  Nevertheless, since the district court's conclusion was warranted based the entirety of the record and filings, and because I would affirm the orders of the district court based thereon (even in the absence of any oral hearing), I concur.