# United States Court of Appeals
## For the First Circuit

No. 19-1068

AUSTIN TROUT,

Plaintiff, Appellant,

v.

ORGANIZACIÓN MUNDIAL DE BOXEO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Barron, Lipez, and Dyk,[*]
Circuit Judges.

Miguel J. Ortega Nuñez, with whom Cancio, Nadal, Rivera & Diaz, P.S.C., was on brief, for appellant.
Edward Ricco, with whom David W. Bunting, Rodey, Dickason, Sloan, Akin & Robb, P.A., Joseph C. Laws, Jr., Joseph Laws PSC, Andrew W. Horn, and Law Offices of Andrew W. Horn, P.A., were on brief, for appellee.

July 10, 2020

---

[*] Of the Federal Circuit, sitting by designation.

**BARRON**, **Circuit Judge**.   In 2015, Austin Trout, a professional boxer of some renown who was then residing in New Mexico, sued the World Boxing Organization[1] ("WBO"), which is based in Puerto Rico, in New Mexico state court.   His complaint alleged that the WBO's decision to remove him from its rankings for a certain weight class cost him a chance to pursue the world championship in that class.   The complaint included a claim under the Muhammad Ali Boxing Reform Act ("MABRA"), 15 U.S.C. § 6309(d), as well as claims under Puerto Rico law for breach of contract, fraud, and negligence.

The WBO removed the case to federal court in the District of New Mexico and then, pursuant to a clause in the WBO's Championship Regulations ("Championship Regulations"), successfully moved to transfer the case from there to the United States District Court for the District of Puerto Rico.   Once there, the WBO moved to compel arbitration pursuant to another clause in the Championship Regulations and the Federal Arbitration Act ("FAA").   The District Court granted the motion and dismissed Trout's claims without prejudice on that basis.

Trout now appeals from the District Court's decision to grant the WBO's motion to compel arbitration and the denial of his motion for reconsideration of that ruling.   We **vacate** and **remand**.

---

[1] "World Boxing Organization" is the English translation of "Organización Mundial de Boxeo, Inc."

The WBO relied on section 35(d) of the Championship Regulations to move to transfer Trout's case to the District of Puerto Rico.  That subsection states:

> These Regulations are to be interpreted in conformity with the Laws of the Commonwealth of Puerto Rico.  All WBO Participants agree and consent that the exclusive venue for any or all action in which the WBO is made a party, whether it is to enforce, interpret or declare the application of these Regulations or to appeal from any determination of the WBO, including, but not limited to a determination of the Complaints and Grievance Committee, may be maintained only in the Superior Court of the Commonwealth of Puerto Rico, or, if applicable, in the U.S. District Court for the Commonwealth of Puerto Rico.

Section 35(e) of the Championship Regulations then follows.  That subsection states:

> All WBO participants acknowledge and agree that the mandatory resort to the WBO Appeal[] Regulation is the sole and exclusive remedy for any claim, appeal or contest that arises from any right or status that is or could be subject to these Regulations or which results or could result from or relate to the interpretation or application of these Regulations.  These WBO Appeals and Grievance Committee determinations are arbitrations.

The WBO Appeal Regulations ("Appeal Regulations") provide that disputes arbitrated pursuant to section 35(e) of the Championship Regulations, if not first resolved informally by the WBO President, will be submitted to the "WBO Grievance Committee." That committee is made up of "[t]hree persons designated by the

President" of the WBO, none of whom may be members of the WBO "Executive Committee."

The Executive Committee, however, must confirm the nominations of those candidates whom the President puts forward to serve on the Grievance Committee.  Members of the Grievance Committee serve for "indeterminate terms and . . . are subject to replacement by the nomination of the President of the WBO."

Once a complaint is filed and referred to the Grievance Committee, the chairman of that committee has the discretion to determine the necessary hearing, if any, for resolution of the dispute.  The Appeal Regulations provide that "the Grievance Committee shall act as a fair and independent arbitrator of any grievance arising out of WBO Participation and it shall conduct all of its proceedings as Amiable Compositeur, Ex Aequo et Bono."

The Grievance Committee, after a majority vote of its members, issues its final decision in writing and transmits it to all interested parties.  That decision, according to the Appeal Regulations, "is a final Arbitration[] within the contemplation of" Puerto Rico and federal law.

Following the transfer of Trout's case against the WBO on July 5, 2017, to the United States District Court for the District of Puerto Rico, the WBO, on August 28, 2017, filed its answer to Trout's complaint.  The WBO included with it a motion to

- 4 -

compel arbitration pursuant to section 35(e) of the Championship Regulations. Trout then filed an opposition to that motion.

Trout relied in part on section 35(d) of the Championship Regulations. He contended that the provision's plain terms required that his claims be heard by a local or federal court in Puerto Rico and not by an arbitral tribunal. Trout also argued that the WBO waived its right to compel arbitration pursuant to section 35(e) by waiting to file a motion to compel arbitration until after his case had been transferred to a district court in the District of Puerto Rico. He further contended that his claim under MABRA was not subject to arbitration as a matter of federal law because no claim under that statute was subject to arbitration. And, finally, he contended that, in any event, neither his MABRA claim nor his Puerto Rico law claims could be arbitrated because the Appeal Regulations gave the power to select the members of the Grievance Committee -- and thus the arbitral tribunal -- solely to the WBO.

While the WBO's motion to compel arbitration was pending, Trout began to conduct discovery. The WBO did not move to stay discovery during the pendency of its motion to compel arbitration. Instead, the WBO answered Trout's discovery motions while filing some discovery motions of its own. Then, on September 30, 2018, about ten months after the parties had fully briefed the WBO's motion to compel arbitration, the District Court granted the

- 5 -

motion.  Less than a month later, on October 29, 2018, Trout filed a motion for reconsideration.  In it, he restated his previous objections to the motion to compel arbitration and also argued, for the first time, that the WBO impliedly waived its right to compel arbitration by participating in discovery before the District Court.

The District Court denied Trout's motion to reconsider on November 26, 2018.  This timely appeal followed.

## II.

Trout first argues that section 35(d) of the Championship Regulations precludes any of his claims from being arbitrated, even though the text of section 35(e) would appear to establish that all of them may be arbitrated.  He argues that this surprising result is required by section 35(d) because it provides that "any or all action in which the WBO is made a party, whether it is to enforce, interpret or declare the application of these Regulations or to appeal from any determination of the WBO" can be brought "only in the Superior Court of the Commonwealth of Puerto Rico or, if applicable, in the U.S. District Court for the Commonwealth of Puerto Rico."  Trout reads this language to provide that, regardless of what section 35(e) provides, no such "action" may be maintained in an arbitral tribunal.

The parties agree that Trout's contention raises a question of contract interpretation that, because it concerns a

pure question of law, we must review de novo.  See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 60 (1st Cir. 2018).  Applying that standard of review, we reject Trout's proposed construction of the Championship Regulations, because we conclude that the regulations' plain text, read as a whole, reveals Trout's argument to be implausible.  See López & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64 (1st Cir. 2012) ("[W]e are cognizant that where a contract's wording is explicit and its language unambiguous, the parties are bound by its clearly stated terms and conditions, with no room for further debate.").[2]

Trout asks us to read section 35(d) to render section 35(e) a nullity, as he identifies no case that could fall within the latter provision that would not also be encompassed by the former.  But, we do not assume that contract drafters do such poor work, see 11 R. Lord, Williston on Contracts § 32:5 (4th ed. 2019), and there is no reason to depart from that sensible assumption here, when section 35(d) and section 35(e) may readily be construed to coexist peacefully.

---

[2] We note that the WBO does not dispute that this question -- as well as each of the other questions that we address about whether Trout's claims, in whole or in part, must be arbitrated -- is properly resolved by a court and was not instead delegated to the arbitrator to resolve.  We thus face no dispute over the arbitrability of this issue or any of the other issues we address.

- 7 -

The plain text of section 35(d) encompasses some matters that the plain text of section 35(e) does not. For example, section 35(e) does not, and cannot, subject to arbitration questions that concern the validity of the agreement to arbitrate that section 35(e) reflects. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide.").

For that reason, it is natural to read section 35(d) not to oust section 35(e) altogether, but instead to do the useful work of a typical forum-selection clause. So understood, section 35(d) merely provides that local or federal courts in Puerto Rico -- rather than local or federal courts anywhere else -- are the only ones that may hear those matters to which it applies and that section 35(e) does not itself provide must be heard by an arbitral tribunal.

At the same time, on this reading, section 35(e) does the useful work of a typical arbitration clause. It identifies the matters that the parties have agreed to have decided by arbitration rather than in court and, so understood, it addresses only those matters for which the forum-selection clause set forth in section 35(d) has no application. We thus reject Trout's first basis for reversing the District Court's decision, as it

implausibly treats provisions that may comfortably be read to work together as if they were intended to be at loggerheads.

## III.

Trout next contends that the District Court erred in granting the WBO's motion to compel arbitration because the WBO impliedly waived its right to invoke arbitration as to his claims -- whether arising under MABRA or Puerto Rico law -- through its conduct in the litigation. In deciding whether a party has impliedly waived its right to invoke arbitration through its litigation conduct, "we ask whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice." Joca-Roca Real Estate, LLC v. Brennan, 772 F.3d 945, 948 (1st Cir. 2014). The inexhaustive list of factors that guide us in making that determination include:

> [T]he length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced.

Id.

We review de novo a preserved claim of implied waiver based on litigation conduct. See Creative Sols. Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 33 (1st Cir. 2001). Nonetheless, "[a]s

- 9 -

federal policy strongly favors arbitration of disputes, a '[w]aiver is not to be lightly inferred,' [and] thus reasonable doubts as to whether a party has waived the right to arbitrate should be resolved in favor of arbitration." Tyco Int'l Ltd. v. Swartz (In re Tyco Int'l Ltd. Sec. Litig.), 422 F.3d 41, 44 (1st Cir. 2005) (second alteration in original) (quoting Restoration Pres. Masonry, Inc. v. Grove Eur. Ltd., 325 F.3d 54, 61 (1st Cir. 2003)).

Trout first attempts to locate an implicit waiver in the WBO's decision to respond to his complaint in New Mexico state court by seeking to remove his case to the District of New Mexico and then to transfer it to the District of Puerto Rico without moving to compel arbitration in taking either action. But, the WBO's decision to conduct the litigation in this manner cannot be treated as an implied waiver of its right to compel arbitration. To do so would be to require the WBO to relinquish its bargained-for right to select the forum in which to have its motion to compel arbitration adjudicated as the price for enforcing its bargained-for right to make that very same motion. Trout identifies no precedent that would support that perverse result.

Trout separately argues that the WBO impliedly waived its right to arbitrate by participating in discovery after filing its motion to compel arbitration with the District Court. Trout identified this ground for finding waiver for the first time in

his motion for reconsideration of the District Court's decision to grant the WBO's motion to compel arbitration. We review the denial of a motion for reconsideration for abuse of discretion, see Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011), and we find none.

Because Trout's argument for finding an implied waiver on this ground "could have been raised before" the District Court granted the WBO's motion to compel, the District Court was justified in denying the motion for reconsideration on that basis alone. Marks 3-Zet-Ernst Marks GmBh & Co. KG v. Presstek, Inc., 455 F.3d 7, 15-16 (1st Cir. 2006) ("A motion for reconsideration 'does not provide a vehicle for a party to undo its own procedural failures and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" (quoting Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005))).

In any event, the "quantum of discovery" that the WBO engaged in during the pendency of its motion to compel arbitration was not of a kind or of a scope that made it an abuse of discretion for a district court not to find an implicit waiver based on litigation conduct. And that is especially so, given that we are not supposed to lightly infer one. See Tyco, 422 F.3d at 44.

The WBO filed its motion to compel arbitration as soon as the case reached the proper forum.  It participated in the discovery process only occasionally during the nearly year-long period that its motion was pending, and, even then, the WBO did so only after Trout himself had initiated discovery.[3]  See Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 460 (3d Cir. 2011) (noting that a court must "focus[] on the amount and scope of discovery in which the parties engaged prior to the request for arbitration" when considering whether a party waived its right to compel arbitration (emphasis added)).  That Trout himself did not see fit to argue that the WBO's discovery-related conduct was a ground for finding implied waiver until after the District Court had ruled on the motion to compel arbitration further supports the conclusion that the WBO's litigation conduct in the interim was not of a scope or kind that impliedly waived its then-pending motion to compel arbitration.  See Joca-Roca Real Estate, 772 F.3d at 948.

**IV.**

We come, then, to Trout's contention that MABRA bars any claims that are brought under it from being arbitrated.  Reviewing de novo, see Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith,

---

[3] We note that there is no bar imposed by federal law on the use of the already-completed discovery in any possible subsequent arbitration.  See GEA Grp. AG v. Flex-N-Gate Corp., 740 F.3d 411, 418 (7th Cir. 2014) (Posner, J.) (leaving it up to German courts and arbitrators to decide whether discovery completed in a district court may be used in related proceedings taking place in Germany).

Inc., 170 F.3d 1, 7 (1st Cir. 1999), we find no merit to this argument.

The Supreme Court has explained that there is no categorical bar to the arbitration of federal-statutory claims. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."). The Court has observed that "all statutory claims may not be appropriate for arbitration," as Congress retains the power to "preclude a waiver of a judicial forum for" a given statutory claim. Id.

Trout bears the burden to show that Congress evidenced an intent to preclude such a waiver under MABRA -- and thus to preclude the arbitration of his claim under it -- either expressly or impliedly through its "text . . . , its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." Id. (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987)). He has not met that burden.

Trout points to the statute's text, which provides that "[a]ny boxer who suffers economic injury as a result of a violation of any provision of this chapter may bring an action in the appropriate Federal or State court and recover the damages suffered, court costs, and reasonable attorneys fees and expenses." 15 U.S.C. § 6309(d) (emphasis added). He interprets

- 13 -

this language to vest "[j]urisdiction for private claims under" MABRA exclusively in "state court or federal court."

But, under Gilmer, Trout must point to text in MABRA that "explicitly precludes arbitration," not merely text that creates a cause of action. 500 U.S. at 26 ("[W]e have held enforceable arbitration agreements relating to claims arising under the Sherman Act, . . . § 10(b) of the Securities Exchange Act of 1934, . . . the civil provisions of [RICO], . . . and § 12(2) of the Securities Act of 1933.").[4] The text in MABRA to which Trout points does merely the latter. Nor does Trout identify anything about arbitration that, in and of itself, creates an irreconcilable conflict with MABRA's purposes. Thus, this aspect of his challenge fails.

**V.**

That brings us to Trout's last challenge, in which he takes aim at the District Court's ruling by focusing solely on the arbitrator-selection provision that the Appeal Regulations set forth. Trout contends -- correctly -- that this provision grants the WBO exclusive control over the appointment of the arbitrators

---

[4] See also Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1627 (2018) (noting that "[i]n many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes," including "statutes ranging from the Sherman and Clayton Acts to the Age Discrimination in Employment Act, the Credit Repair Organizations Act, the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act").

- 14 -

who will decide his claims.  Under its plain terms, the WBO could even appoint its own employees -- including direct aides to the head of the WBO -- to the arbitration panel with no input from Trout.  In consequence, Trout argues that the arbitration agreement does not provide him with a "fair opportunity" to pursue either his claim under MABRA or his claims under Puerto Rico law because the arbitrator, in virtue of the method of selection, would be inherently biased.

Trout supports this contention in part by invoking the Supreme Court of Puerto Rico's decision in Unisys P.R., Inc. v. Ramallo Bros. Printing, Inc., 1991 WL 735351, 128 P.R. Dec. 842 (1991).  But, that case merely enumerates a series of factors that determine whether Puerto Rico contract law permits a forum-selection clause to be enforced, id. at 855, and Trout fails to explain how that case bears on whether his claims are, under Puerto Rico contract law, subject to arbitration pursuant to the Appeal Regulations.  Thus, this aspect of his challenge to the enforceability of the arbitration agreement fails, as the District Court found and as the WBO contends, at a minimum for lack of adequate development.  See Mills v. U.S. Bank, NA, 753 F.3d 47, 54 (1st Cir. 2014).

But, Trout's contention that the arbitration agreement is "unreasonable and unjust" because the arbitrator-selection provision permits the WBO to act as both "party and judge" has

- 15 -

obvious force, notwithstanding that he does not identify any direct authority to support his contention that the arbitral agreement may not be enforced in consequence.[5]  Nor does the WBO contend that Trout has forfeited or waived any argument under Puerto Rico law against enforcement of the arbitration agreement beyond the contention that he makes in that regard based on Unisys.  Instead, the WBO takes on Trout's argument about the problem with the arbitrator-selection provision on the merits.

In doing so, the WBO -- understandably -- treats Trout's challenge to this aspect of the arbitration agreement as a contention that it creates such an inherent risk of bias in the

---

[5] See In re Cross & Brown Co. v. Nelson, 167 N.Y.S.2d 573, 575 (N.Y. App. Div. 1957) ("A well-recognized principle of 'natural justice' is that a man may not be a judge in his own cause. . . . [T]he law presumes that a party to a dispute cannot have that disinterestedness and impartiality necessary to act in a judicial or quasi-judicial capacity regarding that controversy."); see also Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 939 (4th Cir. 1999) (invalidating an arbitration agreement under the good faith and material breach doctrines of contract law prior to enforcement, in large part, because the agreement effectively gave the employer total "control over the entire [arbitration] panel and place[d] no limits whatsoever on whom [the employer] [could] put on the list" of potential arbiters); cf. Am. Express Co. v. Italian Colors Rest., 570 U.S. 228, 242 (2013) (Kagan, J., dissenting) (noting that an arbitration agreement "appoint[ing] as an arbitrator an obviously biased person," such as "the CEO of" the defendant, could violate "the rule against prospective waivers of federal rights"); McMullen v. Meijer, Inc., 355 F.3d 485, 494 (6th Cir. 2004) (per curiam) (holding that where an arbitration agreement "grants one party to the arbitration unilateral control over the pool of potential arbitrators," the resulting arbitral forum cannot be "an effective substitute for a judicial forum because it inherently lacks neutrality").

WBO's favor that it renders the arbitration agreement "unconscionable as a matter of law."[6] And, given the choice of law provision in the Championship Regulations, we understand the WBO to be referring, thereby, to the doctrine of unconscionability under Puerto Rico contract law. See P.R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 68 (1st Cir. 2008) ("Puerto Rico law recognizes" unconscionability as a basis for "judicial intervention where a contract exhibits an 'excessively onerous quality that reaches the point of bad faith, and defeats those rules of collective conduct that must be observed by every honest and loyal conscience.'" (quoting López de Victoria v. Rodríguez, 13 P.R. Offic. Trans. 341, 349, 113 D.P.R. 265 (1982))). But, as we will explain, we are not persuaded by the WBO's arguments for rejecting this unconscionability challenge. See Beazer E., Inc. v. Mead Corp., 412 F.3d 429, 437 n.11 (3d Cir. 2005) (noting that

_____

[6] The District Court rejected Trout's "unreasonable and unjust" argument on the ground that proceedings provided for in the Appeal Regulations "meet the essential requirements of fairness" under Ramirez-De-Arellano v. American Airlines, Inc., 133 F.3d 89, 91 (1st Cir. 1997), because the regulations require the Grievance Committee members to act neutrally, grant Trout the right to present evidence, and provide Trout with some kind of hearing. Even if we set aside the question of whether the "fundamental fairness" standard in Ramirez-De-Arellano is applicable in a pre-enforcement challenge to an arbitration agreement, as we will explain, we disagree with the District Court's conclusion that the Appeal Regulations provide for "an impartial decision by the arbitrator." Id. (quoting Sunshine Mining Co. v. United Steelworkers, 823 F.2d 1289, 1295 (9th Cir. 1987)).

"the appellee 'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the [appellant]'" (alteration in original) (quoting Hardy v. City Optical Inc., 39 F.3d 765, 771 (7th Cir. 1994))).

To counter Trout's contention that the agreement is "unreasonable and unjust" because it permits the WBO to act as "party and judge," the WBO relies solely on an aspect of the reasoning set forth in two out-of-circuit district court cases, see Willis v. Nationwide Debt Settlement Grp., 878 F. Supp. 2d 1208, 1224-25 (D. Or. 2012); Davis v. Glob. Client Sols., LLC, No. 3:10-CV-322-H, 2011 WL 4738547, at *1-3 (W.D. Ky. Oct. 7, 2011), which upheld arbitration agreements against challenges that they were unconscionable because they gave one party the exclusive right to select the arbitrator, see Willis, 878 F. Supp. 2d at 1224-25; Davis, 2011 WL 4738547 at *3-4. But, even assuming that these cases -- which construe, respectively, the law of contract in Oregon and Kentucky, see Willis, 878 F. Supp. 2d at 1222-25; Davis, 2011 WL 4738547 at *1-3 -- reflect the law of contract in Puerto Rico, their reasoning fails to show that the agreement here is not unconscionable due to its provision allowing the WBO virtually unfettered discretion to select the members of the arbitral tribunal.

Notably, the WBO relies solely on the portions of the substantive unconscionability analyses in each of these district

- 18 -

court cases that emphasize that the defendants had promised in the arbitration agreements to select an "independent" arbitrator to decide the plaintiffs' claims. Willis, 878 F. Supp. 2d at 1224 (noting the agreement required the defendant to select a "qualified independent arbitrator"); Davis, 2011 WL 4738547 at *3 (noting the agreement required the defendant to select "an arbitrator that is 'qualified and independent'"). That is significant for present purposes, because, in both Willis and Davis, the district courts determined that this contractual limitation on the defendants' selection discretion made it premature to decide that the agreements permitted the defendants to choose an arbitrator who was not "independent" of the defendants. Willis, 878 F. Supp. 2d at 1225; Davis, 2011 WL 4738547 at *4.

Indeed, in Davis, the court raised the prospect that the plaintiff might even have a claim for breach of contract in the event that the arbitrator selected was not "qualified and independent," 2011 WL 4738547 at *4, and thus that there was no reason to invalidate the agreement itself as being unconscionable, id. (noting that "Defendants' bad faith exercise of the provision would be unreasonable and grounds for an objection. On its face, the provision provides that Defendants must choose an independent and qualified arbitrator. In theory, Defendants will comply, and the clause will not result in injustice to Plaintiffs"). It further concluded that, in consequence, the FAA's after-the-fact

- 19 -

review of arbitral awards sufficed to protect against concerns about bias. See id.; 9 U.S.C. § 10(a)(2) (permitting a district court to vacate an arbitral award when a party can show "there was evident partiality or corruption in the arbitrators, or either of them").

The arbitration agreement here, however, does not require the WBO to appoint only "qualified" and "independent" individuals to the Grievance Committee. In fact, at oral argument the WBO conceded that the Appeal Regulations give the WBO's president the power to nominate his or her own assistant to serve on the Grievance Committee.

The WBO does point out that, under the Appeal Regulations, "the Grievance Committee shall act as a fair and independent arbitrator." (Emphasis added). But, that bare instruction about how the Committee must "act" once in place does not address the concern that the WBO is entitled to choose Grievance Committee members under the direct control of the head of the WBO itself and that anyone so chosen is for that reason presumptively not "independent" in the least. Cf. McMullen v. Meijer, Inc., 355 F.3d 485, 494 (6th Cir. 2004) (per curiam) (invalidating an arbitrator-selection provision, as an impermissible prospective waiver of a federal-statutory right, where the arbitration agreement "grant[ed] one party to the arbitration unilateral control over the pool of potential

- 20 -

arbitrators" and thus created a "risk of bias" in favor of the defendant-employer that was "inherent in the arbitrator-selection process").[7] Thus, we agree with Trout that the arbitration may not proceed under the Appeal Regulations, as we are not persuaded by the WBO's only arguments as to why, by permitting the WBO to act as -- in Trout's words -- "party and judge," the arbitration agreement is not so "unreasonable and unjust" as to be unconscionable under Puerto Rico contract law.[8]

That said, as the WBO points out, the Championship Regulations contain a savings clause, which provides that "[i]f

---

[7] In light of our holding, we have no occasion to consider whether the arbitration agreement, in consequence of the Appeal Regulations' arbitrator-selection provision, operates as an unenforceable "prospective waiver" of Trout's federal-statutory claim under MABRA. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985) (noting that "in the event [an arbitration agreement] operated . . . as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy" (emphasis added)); see also McMullen, 355 F.3d at 488, 494 (holding that even where the arbitration agreement required the defendant-employer to include within the arbitration pool only "neutral and experienced" lawyers who were "unemployed by and unaffiliated with the company," the plaintiff's employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, could not be arbitrated in conformity with the arbitration agreement because the agreement "grant[ed] one party to the arbitration unilateral control over the pool of potential arbitrators").

[8] The WBO does not assert that Puerto Rico contract law would "interfere[] with fundamental attributes of arbitration and thus create[] a scheme inconsistent with the FAA," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011), if it were construed to treat the arbitrator-selection provision in the Appeal Regulations as unconscionable.

any of these Rules are determined to be unenforceable, the balance of these Rules shall remain in full force and effect."  As a result, it thus may be that, as the WBO contends, the arbitrator-selection provision is severable from the remainder of the arbitration agreement.

If that is the case, then, as the WBO also points out, the arbitration could move forward as to all of Trout's claims -- whether he brings them under MABRA or Puerto Rico law -- pursuant to section 35(e) and the Appeal Regulations, albeit with an arbitrator appointed by the District Court, pursuant to 9 U.S.C. § 5.  For, that provision gives district courts the power to "designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein" when the arbitration agreement fails to provide for the selection of an arbitrator.

In determining whether "the [arbitration agreement] should be enforced absent the invalid arbitrator-selection mechanism and, if it should, how to select an arbitrator," however, we must consider "the parties' intent," the "[f]ederal policy favoring arbitration," and "the interplay between state law and that federal policy."  McMullen, 355 F.3d at 495.  But, the parties have not fully engaged with those factors or the applicability of

- 22 -

the savings clause in the Championship Regulations in their briefing to us.

We therefore leave it to the District Court to determine in the first instance whether the arbitrator-selection provision at issue here is severable from the remainder of the arbitration agreement.  In doing so, we express no opinion as to whether the savings clause in the Championship Regulations can be triggered by the invalidation of a provision in the Appeal Regulations or any of the other matters that bear on the severability determination.

## VI.

We **vacate** and **remand** for further proceedings consistent with this opinion.  No costs awarded.


**-Concurring Opinion Follows-**

DYK, **Circuit Judge, concurring**.  Although I join the majority's well-reasoned opinion in full, I write to separately note that there is a potentially significant issue here not raised or addressed by the parties: namely, whether arbitration-clause-specific issues of unconscionability (and certain related defenses) are governed by individual state law[9] or federal common law.  The WBO failed to argue this point, and the result reached here does not depend on resolution of that question, since the arbitrator selection clause would be unconscionable under either state law or federal law.

Section 2 of the FAA includes what is known as the "saving clause."  It provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The saving clause permits the application of state law "<u>if</u> that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally." <u>Doctor's Assocs., Inc.</u> v. <u>Casarotto</u>, 517 U.S. 681, 687 (1996) (quoting <u>Perry</u> v. <u>Thomas</u>, 482 U.S. 483, 493 n.9 (1987)).  But in several cases, the Supreme Court has held that state law "defenses that apply only to arbitration or that derive their meaning from

---

[9] The WBO Regulations provide: "These Regulations are to be interpreted in conformity with the Laws of the Commonwealth of Puerto Rico."  Puerto Rico is also the forum state.

- 24 -

the fact that an agreement to arbitrate is at issue" are preempted. AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (quoting Doctor's Assocs., 517 U.S. at 687); Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 137 S. Ct. 1421, 1426 (2017); Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1622 (2018).

There is a difference of view as to whether these Supreme Court cases hold that arbitration-specific state law is entirely preempted (for example, with respect to unconscionability) or only state law that conflicts with the purposes of the FAA.[10] If state law is entirely preempted, it seems to follow that federal common law (drawing on general principles of state law) governs the issue of unconscionability with respect to arbitration clauses. In other

---

[10] Compare Sonic-Calabasas A, Inc. v. Moreno, 311 P.3d 184, 218 (2013) (Liu, J.) ("[S]tate-law rules that do not 'interfere[] with fundamental attributes of arbitration' do not implicate Concepcion's limits on state unconscionability rules." (second alteration in original) (citation omitted) (quoting Concepcion, 563 U.S. at 344)), and Chavarria v. Ralphs Grocery Co., 733 F.3d 916, 927 (9th Cir. 2013) ("The Supreme Court's holding [in Concepcion] that the FAA preempts state laws having a 'disproportionate impact' on arbitration cannot be read to immunize all arbitration agreements from invalidation no matter how unconscionable they may be, so long as they invoke the shield of arbitration."), with Sonic-Calabasas, 311 P.3d at 231 (Chin, J., dissenting) ("Concepcion explains[ that] 'a [state] court may not rely on the uniqueness of an agreement to arbitrate as the basis for a state-law holding that enforcement would be unconscionable.'" (quoting Concepcion, 563 U.S. at 341)).

A third possibility alluded to by the majority is that, despite the Supreme Court's decision in American Express Co. v. Italian Colors Restaurant, 570 U.S. 228, 235 (2013), federal law embodied in the substantive statutes may play a role.

areas where section 2 has been held to displace state law, it appears to have created federal common law.[11]  Federal common law would invalidate the one-sided arbitration here looking to general state-law principles.

We appropriately leave to another day the question whether the issue of unconscionability as to arbitration clauses is governed by state law (if consistent with the purposes of the FAA) or by federal common law.

---

[11] For example, the question whether a particular agreement contemplates "arbitration" is governed by federal law.  See Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004); Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc., 390 F.3d 684, 687, 689 (10th Cir. 2004).  Federal substantive law also governs the issues of waiver and severability.  See Rankin v. Allstate Insurance Co., 336 F.3d 8 n.3 (1st Cir. 2003) (waiver); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 447 (2006) (severability).  And under chapter 2 of the FAA, "'federal common law provides the determinative rules of decision'" "governing the recognition and enforcement of international arbitration awards."  InterGen N.V. v. Grina, 344 F.3d 134, 143 (1st Cir. 2003) (quoting Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000)).